REID, Judge.
This is a suit to enforce a purported sale of toys, toy racks, and accounts receivable from a sales route which had been operated by James F. Callender. Plaintiff alleged that an inventory was made with the defendant, Harry L. Spears and a price of $1020.65 was set. Defendant denied that he had ever come to a final agreement with plaintiff concerning the planned sale.
Plaintiff also seeks to recover income of $300.00 per month starting with the month of October and ending with March, 1961, the month the trial on the merits was had, as damages for breach of contract.
A trial was had on the merits and judgment was rendered for plaintiff, James F. Callender, in the amount of $1020.65.
The defendant, Harry L. Spears, has perfected a devolutive appeal from this adverse judgment.
The situation presented by the record is the following:
Joe Atol, a wholesaler, furnished toys and racks to five salesmen, either by sale or consignment. One of these salesmen was James F. Callender, the plaintiff in this case. In September of 1957, Atol who was losing .money furnishing these salesmen with merchandise, decided to effect a sale of his merchandise and, if possible, the toys and racks of the salesmen also. Atol negotiated with Spears in an effort to sell out and recoup his losses.
Plaintiff contended that he owned the toys and racks on his route and merely purchased from Atol, but was not under his control. At Atol’s request he came in with the other four salesmen to discuss the proposed sale. Each of the other salesmen made inventories of the toys and racks on his route with Harry J. Spears, the son of the defendant. A price was set and Atol was paid the money owed him on the various salesmen’s accounts by Spears. The salesmen received any amounts in excess of the amounts owed to Atol.
The only one of the salesmen who did not thus complete negotiations with Spears was Callender. The defendant strongly denies that he and Callender ever reached a binding agreement relative to the purchase of Callender’s merchandise, racks and accounts receivable. He did admit that he went with Callender on two different occasions to inventory the merchandise and accounts receivable. He also admitted that he picked up one rack of toys from a cafe which had been serviced by the defendant and that he had picked up loose toys at plaintiff’s home.
There is considerable testimony in the record which is conflicting. The trial court made the observation in its written reasons for judgment that this case is very close and could be decided either way on the evidence presented.
As pointed out by counsel for defendant the testimony of Atol at one point appears to be evasive and to intentionally favor the plaintiff.
“Q: Now, how was it that Mr. Cal-lender and Mr. Spears got together with reference to Mr. Callender selling and Mr. Spears buying?
“A: How they arranged to meet? Is that what you mean?
*504 “Q: Yes
“A: Well, I had called Mr. Spears up and told him that the men that were buying from me, they weren’t too satisfied. They were willing to sell out their routes. And they had all owed me money and naturally I was looking out for myself, too; and, if they could sell out, I could get my money.
“Q: Sure. Did Mr. Callender ever buy any more toys from you after this conversation that he had with Mr. Spears ?
“A: No sir, he did not.
“Q: Was this about the same time that Mr. Spears bought you out as far as the toys were concerned?
“A: Yes, it was.
“Q: Did Mr. Callender ever have any conversation with you after that?
“A: He told me — of course, I had known that he was going around with Mr. Spears. Somehow, or other, I guess he didn’t get paid or what it was now, I don’t know. I don’t believe it has ever been settled up.
“Q: You did then have some more conversations with reference to this matter ?
“A: Yes.
“Q : What did he tell you ?
“A: He just told me that he had never come to- — he’d gone around or he’d gone around the routes but he had never gotten his money for his locations and the toys.
“Q: Did he ever tell you that the price had been set, agreed upon ?
“A: No sir, that I didn’t know.”
Obviously, in the underlined testimony above, Atol started to say that they had never come to an agreement. He stopped short of saying this, however, he did testify that he did not know if defendant and' plaintiff ever set a price. It is not essential to plaintiff’s case that Atol would know when or if a final agreement was reached between Callender and Spears. As stated' by Callender, without contradiction, he was-the owner of and in complete charge of his-own merchandise and route. The only stage-at which Atol was to enter the transaction between Callender and Spears would have-been when payment for the sale was made. At that time he was to collect the amount due him on Callender’s account with him.
The defendant admits that he is servicing several of plaintiff’s former customers, some-of which were his customers prior to the time he was taken on Callender’s route to-take an inventory. This is one item of proof. Its effect is not conclusive though since Callender himself stated that the locations of his outlets were not included in the sale. This fact is significant though when it is considered with plaintiff’s own uncontradicted claim that one of the terms of the proposed sale was that he was not to compete with Spears in the toy business after sale was completed. In addition, Cal-lender proved that he had not competed with Spears’ toy business since the time he and Spears went on the toy route together.
Spears made the surprising admission that he agreed to purchase Callender’s merchandise if Callender would first bring all the toys in Atol’s to have the price tags corrected. He also stated that the contract was never completed because Callender had never brought the toys in. As was the case with most of Spears’ testimony this contention was unsupported by any other evidence in the record. In addition this claim is weakened by Spears’ own admission that he himself picked up some of the loose toys at Callender’s home and a rack at Lewis’ Cafe and paid Atol direct for these items. These actions being affirmative actions on the part of Spears himself, are convincing proof that Spears felt at that time that he was purchasing Callender’s route. It is difficult to conceive of any other reason for these actions.
*505 As is usual in this case the plaintiff had ■the burden of proof. This burden is set forth in the pertinent article of the LSA-Revised Civil Code:
Article 2277:
“All agreements relative to movable property, and all contracts for the payment of money, where the value does not exceed five hundred dollars, which are not reduced to writing, may be proved by any other competent evidence; such contracts or agreements, above five hundred dollars in value, must be proved at least by one credible witness, and other corroborating circumstances.”
It should be noted that defendant made a very uncooperative and evasive witness. The trial court observed this fact. There were even minor discrepancies in his testimony on deposition and on the trial. It is felt that the court was justified in ■considering this fact in arriving at its conclusions.
The trial judge made the following observation in summing up his reasons for judgment: “I could have decided this case for Mr. Spears. I can find things in the testimony to decide the case for Spears, except that I give more weight to the testimony of Mr. Callender than I do that of Mr. Spears.”
It is felt that the trial court’s observations on this point are quite true. The case is a close one, since there is still a question of what happened to the other toys and accounts receivable which Callender contended that Spears purchased from him. The record is devoid of proof either way on this point. However, considering the record as a whole, it is felt that the district court properly granted judgment for the plaintiff, Callender, and that there was no manifest error in its conclusions.
Plaintiff also claimed damages for loss of income due to defendant’s breach of contract. The lower court rejected this claim for damages. Plaintiff has answered the appeal and asked that his award be increased to cover the damages he claims to have suffered from loss of business in the amount of $300.00 per month from October, 1957 through September, 1960 or the total sum of $10,800.00. It is felt that this demand is inconsistent with plaintiff’s main demand. An action to enforce a contract of sale by collecting the purchase price does not contemplate a claim for the loss of income from the business. Furthermore, plaintiff’s counsel has cited no authority in the support of the claim for the nonperformance of said contract. It is felt that this claim is without merit.
For the foregoing reasons it is ordered that the judgment of the lower court be affirmed.
Affirmed.